Filed 5/25/23  P. v. Villegas CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ALFREDO GABRIEL VILLEGAS,<br><br>    Defendant and Appellant. | G061176<br><br>(Super. Ct. No. 15NF2192)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Reversed and remanded for resentencing.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Paige B. Hazard and James M. Toohey, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Alfredo Gabriel Villegas appeals from the trial court's sentencing decision, which postdated by several weeks the January 2022 effective date of new legislation providing for the presumptive imposition of a low term based on a defendant's youth under certain circumstances. (See Pen. Code,[1] § 1170, subd. (b)(6)(B).) Specifically, the statute directs the court to determine whether age may have been "a contributing factor in the commission of the offense." (*Id.*, subd. (b)(6).) When the record indicates the trial court was not aware of new discretionary authority and it does not reflect that the sentencing result "'clearly'" would have been the same had the court been so aware, the standard remedy is to vacate the sentence imposed and remand the matter for resentencing. (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 (*Gutierrez*).) That is the situation here. We express no opinion as to how the trial court should exercise its discretion on remand.

## FACTUAL AND PROCEDURAL BACKGROUND

Villegas pled guilty to one count of attempted murder (§§ 664, subd. (a); 187, subd. (a)), one count of mayhem (§ 203), one count of assault likely to cause great bodily harm (§ 245, subd. (a)(4)), and one count of active participation in a criminal street gang (§ 186.22, subd. (a)). Based on the court's indicated sentence with a "23 y[ea]r lid" settlement offer reflected on his plea form, the actual sentence was to be determined "at sentencing."

According to the probation officer's pre-sentence report, Villegas "and his mother went to the Anaheim Police Department" on August 11, 2015 "so the defendant could turn himself in" for the offenses he committed two weeks earlier on July 26. Villegas and his gang cohort had been spray painting graffiti when two older men, one

---

[1] All further undesignated statutory references are to the Penal Code.

51 years old (James B.) and the other 66 years old (Michael O.), told them to stop. Both men were then assaulted, and James B. was left paralyzed.

Michael O. described the crimes to a police officer: he and James had been "drinking beer and talking in the parking lot" near an abandoned house "when two or three subjects began spray painting the house, the fence and the sidewalk. While they were 'tagging' the property, James told them to stop. The subjects asked James 'where he was from,' to which James denied being a part of a gang. They then approached and assaulted James. Michael ran to the street to help James and he was knocked to the ground, punched and kicked. At one point, one of the subjects stabbed James in the back. . . . [A]ll four subjects then ran back to the car and drove away."

Responding officers found James B. on the ground, still conscious, with a three-centimeter laceration on his mid-back on the right side of his spine; he was transported to UCI Medical Center where he was treated for the wound, a collapsed lung, and two abrasions to his forehead. The knife thrust to James's back inflicted a catastrophic injury; he never walked again.

Villegas admitted as the factual basis for his plea that he "willfully and unlawfully attempted to kill James B. by stabbing him with a knife. I also personally inflicted great bodily injury on James B. which resulted in paralysis and maliciously committed mayhem against him. I committed these crimes as a member and active participant of 'DWC' and did so for the benefit of and in association with 'DWC,' a criminal street gang with the specific intent to provide, further, and assist in criminal conduct by 'DWC' gang members."

The trial court held an initial sentencing hearing in January 2022; two of James B.'s family members spoke, emphasizing their pain and loss, and the hardships the

3

victim bore from his injuries. Villegas made a statement in a sealed portion of the transcript.[2]

Following the testimony, the court continued the hearing to consider a raft of new legislation that became effective that month. In particular, the court observed that "[o]ne of those laws," referring to section 1385, "is extremely complicated." The court did not mention new youthful offender considerations enacted in section 1170.

At the reconvened hearing in February 2022, Villegas again addressed the court, this time without requesting a sealed record. He emphasized his mental state at the time of the offense: "I was weak." He had "allowed [his] fears" to dominate him, had "acted really impulsively," and never intended in "go[ing] out that night to hurt anybody," for which he was "very sorry." He had "anticipated to be able to tell that to James B[.] after all these years," regretted that he was unable to do so, and regretted also that, at the last hearing, he "said sorry behind a screen" (apparently due to Covid 19 measures).

During the hearing, the trial court engaged in a detailed analysis of aggravating and mitigating sentencing factors, related to the new provisions of section 1385 it had mentioned at the prior hearing. The court declined to find Villegas suffered "childhood trauma" as defined in section 1385, subdivision (c)(3)(E), or that "such trauma provided a connection to the current offense." The court considered its new authority under section 1385 "to dismiss in the interest of justice certain sentencing enhancements," and declined to do so.

---

[2] Comments by James B.'s family members indicate he died at some point before the sentencing hearing, apparently not as a result of the injuries Villegas inflicted, given that he was not charged with murder. The record does not disclose why more than six years passed—during which Villegas was in prison—between the offense and Villegas's guilty plea and sentencing.

In discussing aggravating factors generally in relation to "the issue of public safety," the court found that "despite his stated desire to help his family and be a positive influence, and that he had learned from his mistake, the defendant has engaged in 16 major violations and nine minor violations while inside the Orange County jail, most notably on 10-9-19, fighting in jail."

The court never addressed Villegas's age at the time of the offense, except to find in denying probation that "the defendant was not per se youthful" under court rules related to enhanced probation eligibility for "youthful or aged" offenders. (Cal. Rules of Court, rule 4.413(c)(2)(C) [no specification of ages constituting "youthful" or "aged"].)

Villegas was 25 years old at the time of the offense, and therefore eligible for consideration as a youthful offender under a subpart (B) of subparagraph (6) of newly added section 1170, subdivision (b), including the imposition of a presumptive low term. (§ 1170, subd. (b)(6)(B).) The court instead recited language from the new determinate sentencing law providing for the middle term as the presumptive term. (§ 1170, subd. (b)(1), (2).)

The court imposed the middle term of seven years on the attempted murder count, doubled to 14 years based on a juvenile strike that the court declined to strike. Consecutive terms of five years for a great bodily injury enhancement on count 1 and one year for the assault in count 3, doubled to two years, brought the sentence to 21 years. To stay within the indicated sentence, the court reduced a 10-year criminal street gang enhancement (§ 186.22, subd. (b)(1)(C)) to one year as one-third the midterm of three years on a lesser gang enhancement (*id.*, subd. (b)(1)(A)). The court stayed punishment on the mayhem and gang participation counts under section 654, bringing Villegas's total term to 22 years.

## DISCUSSION

Villegas contends remand is necessary for the trial court to exercise its discretion under then newly enacted section 1170, subdivision (b)(6)(B). Under the circumstances present here, we agree.

Effective January 1, 2022, several pieces of complex, related legislation amended section 1170's determinate sentencing provisions in various ways. (See Sen. Bill No. 567 (2021–2022 Reg. Sess., Stats. 2021, ch. 731, § 1.3); Assem. Bill No. 124 (2021–2022 Reg. Sess., Stats. 2021, ch. 695, § 5); see also Assem. Bill No. 1540 (2021-2022 Reg. Sess., Stats. 2021, ch. 719, § 2).) Relevant here, Senate Bill No. 567 amended section 1170, former subdivision (b), by making the middle term of a sentencing triad the presumptive sentence for a term of imprisonment. (Stats. 2021, ch. 731, § 1.3, adding § 1170, subd. (b)(1), (2).)

However, another provision in Senate Bill No. 567 created a presumption in favor of the low term for defendants less than 26 years old at the time of the offense. (Stats. 2021, ch. 695, § 4, adding § 1016.7; Stats. 2021, ch. 695, § 5.1, adding § 1170, subd. (b)(6)(B).) The presumption is triggered when "[t]he person is a youth, or was a youth as defined under subdivision (b) of [s]ection 1016.7 at the time of the commission of the offense." (§ 1170, subd. (b)(6)(B).) The referenced section and subdivision state: "A 'youth' for purposes of this section includes any person under 26 years of age on the date the offense was committed." (§ 1016.7, subd. (b).)

Section 1170, subdivision (b)(6)(B), does not require imposition of the lower term in every case in which the defendant was less than 26 years old when he committed the crime. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.) Rather, its presumption for the low term arises if the defendant's youth was "a contributing factor" in his or her commission of the crime. (§ 1170, subd. (b)(6).) The presumption does not apply if "the court finds that the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests

6

of justice." (*Ibid*.) These considerations require the trial court to exercise its discretion in determining whether the defendant is entitled to the presumptive low term. (*Flores*, at p. 1039.)

We ordinarily "presume that the court 'knows and applies the correct statutory and case law,'" but "evidence to the contrary" requires a different result. (*People v. Thomas* (2011) 52 Cal.4th 336, 361.) When the record indicates "that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228 (*Brown*).)

Here, the trial court gave studious attention to new legislative changes made to section 1385 and referenced the midterm as the governing presumption. The record suggests the court was not aware of section 1170's presumptive low term for youthful offenders. The court's reference to Villegas's age only in the context of probation rules, and not section 1170, indicates a sentencing approach contrary to the Legislature's ameliorative intent in section 1170, subdivision (b)(6)(B). And while the thrust of Villegas's statements of remorse focused on his mental state at the time of the offense, consistent with the weaknesses of youth, the court's response in which it relied solely on Villegas's subsequent conduct in prison, as an adult, suggests the court was unaware of the Legislature's directive in setting a specific age range that Villegas fell within for consideration as a youthful offender.

Respondent argues that Villegas forfeited his appellate argument relying on section 1170, subdivision (b)(6)(B), by failing to raise it below. Respondent also suggests the omission may have been a tactical choice, arguing any emphasis on his age would have been inconsistent with Villegas's intent to take responsibility for his crimes. Villegas counters with a claim of ineffective assistance of counsel; he further argues that

7

owning up to his offenses in his plea and at the sentencing hearing would not have undermined the court's consideration of his youth at the time he committed the offenses.

These contentions are inapposite here. "Defendants are entitled to 'sentencing decisions made in the exercise of the "informed discretion" of the sentencing court,' and a court that is unaware of its discretionary authority cannot exercise its informed discretion." (*Brown*, *supra*, 147 Cal.App.4th at p. 1228.) Remand is therefore required because we find nothing in the record to "clearly indicate" the court's sentencing choices would have been the same had it considered section 1170, subdivision (b)(6)(B). (See *Gutierrez*, *supra*, 58 Cal.4th at p. 1391.) As with the court's thoughtful weighing of the legislative changes it did discuss at sentencing, Villegas is entitled to the same consideration as to whether he should be sentenced as a youthful offender.

## DISPOSITION

The judgment is reversed as to the sentence imposed; the sentence is vacated, and the matter is remanded for resentencing.



GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


DELANEY, J.


8